# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Filed August 3, 2012

No. 11-1271

IN RE: AIKEN COUNTY, ET AL.,
PETITIONERS

———

On Petition for Writ of Mandamus

———

Before: GARLAND and KAVANAUGH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

## O R D E R

It is **ORDERED** that the case be held in abeyance and that the parties file, by no later than December 14, 2012, updates on the status of Fiscal Year 2013 appropriations with respect to the issues presented.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/

Jennifer M. Clark
Deputy Clerk

\* A statement by *Circuit Judge* KAVANAUGH, concurring, is attached.

\* A statement by *Senior Circuit Judge* RANDOLPH, dissenting, is attached.

KAVANAUGH, *Circuit Judge*, concurring: Petitioners seek mandamus. They ask us to order the Nuclear Regulatory Commission to comply with the statutory mandate requiring the Commission to act on the Department of Energy's long-pending license application to store nuclear waste at Yucca Mountain. The Commission resists on the ground that it does not have sufficient appropriated funds to complete action on the license application (even though it has appropriated funds available to at least start). In these unusual circumstances, I support the Court's decision to hold the case temporarily in abeyance. Under our precedents, mandamus is an equitable remedy that takes account of practical considerations such as timing, resources, and efficacy, among other things. The parties' submissions reveal that granting mandamus now would entail significant expenditures of government resources. But Congress's upcoming appropriations decisions could well affect whether those expenditures are necessary. Indeed, this case may soon be mooted by Congress's actions in enacting Fiscal Year 2013 appropriations. For example, Congress may decide to appropriate additional money to the Nuclear Regulatory Commission for the Yucca Mountain licensing process, in which case the Commission's arguments against mandamus would clearly be unavailing. Alternatively, Congress may enact statutory text that makes clear that the Nuclear Regulatory Commission may not use any appropriated money (including previously appropriated funds) for the Yucca Mountain licensing process, in which case petitioners' arguments for mandamus would clearly be unavailing.

Of course, it is possible that Congress will take neither of those steps and add no clarity to the current dispute. In that circumstance, I believe mandamus likely would have to be granted. An executive or independent agency generally has no authority to disregard a statute that mandates or prohibits specific agency actions, at least so long as there is some

appropriated funding available.[1]  Here, the law mandates that the Nuclear Regulatory Commission act on the license

---

[1] That principle has exceptions rooted in the Constitution, but no such exception applies here.

For example, the Executive generally may decline to follow a statutory mandate or prohibition if the President concludes the statute is unconstitutional, unless a final Court decision in a justiciable case rejects the constitutional objection.  (In the event of such a Court decision, the Court's word controls, and the Executive generally must adhere to the statute.  *See, e.g.*, *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977).)  In this case, the Executive has interposed no such constitutional objection.

Nor does this case involve a statute that impermissibly purports to override the Executive's traditional prosecutorial discretion.  Under Article II of the Constitution, the President and executive and independent agencies possess significant prosecutorial discretion not to enforce a statute against private individuals – that is, prosecutorial discretion not to bring criminal or civil charges and seek sanctions or penalties against private individuals for violations of a statute. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *Seven-Sky v. Holder*, 661 F.3d 1, 50 & n.43 (Kavanaugh, J., dissenting).  That prosecutorial discretion is at its zenith when the President independently concludes that the statute is unconstitutional.  Congress generally may not intrude upon that exclusive Article II power – that is, a statute generally may not *require* the Executive to bring charges or seek sanctions or penalties against private individuals for violations of a statute. *See United States v. Nixon*, 418 U.S. at 693 ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case").  That division of authority is a bedrock element of the Constitution's separation of powers that helps preserve individual liberty. *See* U.S. CONST. art. II, § 1, cl. 1 (executive power); U.S. CONST. art. II, § 2, cl. 1 (pardon power); U.S. CONST. art. II, § 3 (Take Care Clause); *see also* U.S. CONST. art. I, § 9, cl. 3 (Bill of Attainder Clause).  This case, however, does not involve an

application, and the agency still has a significant amount of appropriated money available to at least begin that task. In those circumstances, an agency appears to have no legal authority to defy the law in the manner suggested by the Nuclear Regulatory Commission in this case.

In short, in the upcoming appropriations laws, Congress may make clear its intent on this matter. In applying the appropriate equitable considerations our cases set forth for mandamus cases, out of appropriate respect for the coordinate branches of Government, and so as to not unnecessarily waste government resources, it behooves us to wait for Congress. If Congress provides no additional clarity on the matter, however, we will be compelled to act on the petition for mandamus.

---

exercise of prosecutorial discretion, and the Nuclear Regulatory Commission has not claimed otherwise.

RANDOLPH, *Senior Circuit Judge*, dissenting: Congress has its responsibilities. We in the Judiciary have ours. Whether mandamus should issue when an agency is wilfully defying an earlier Congress's command has never depended on the possibility that a later Congress might do something to excuse the violation.

Here, the Nuclear Regulatory Commission has disregarded a clear statutory mandate, citing a lack of funding, when in fact it has sufficient funds to move forward. There is no reason to delay issuing a writ of mandamus to correct this transparent violation of the law.

The Nuclear Waste Policy Act states that the Commission "shall consider" the Yucca Mountain license application and "shall issue a final decision approving or disapproving" the application "not later than" three years after its submission. 42 U.S.C. § 10134(d). The Department of Energy filed the Yucca Mountain application in June 2008, *see* Yucca Mountain; Notice of Receipt and Availability of Application, 73 Fed. Reg. 34,348 (June 17, 2008), and Congress later provided substantial appropriations for the licensing process, *see* U.S. NUCLEAR REGULATORY COMMISSION, NUREG-1100, VOL. 26, CONGRESSIONAL BUDGET JUSTIFICATION FOR FY 2011 94-95 (2010).[1] Although the Commission had a duty to act on the application and the means to fulfill that duty, former Chairman Gregory Jaczko orchestrated a systematic campaign of noncompliance. Jaczko unilaterally ordered Commission staff to terminate the review process in October 2010; instructed staff to remove key findings from reports evaluating the Yucca Mountain site; and ignored the will of his fellow Commissioners. *See* U.S. NUCLEAR REGULATORY COMMISSION, OFFICE OF THE INSPECTOR GENERAL, OIG CASE NO. 11-05, NRC CHAIRMAN'S UNILATERAL DECISION TO TERMINATE NRC'S

---

[1] At least $10.4 million of these funds remain available. *See* NRC Supp. Br. 4.

REVIEW OF DOE YUCCA MOUNTAIN REPOSITORY LICENSE APPLICATION 7-10, 17, 44-46 (2011). These transgressions prompted an investigation by the Commission's Inspector General, as well as a letter from all four of the Commission's other members expressing "grave concerns" about Jaczko's performance in office. *See* Matthew Daly, *Nuclear Agency's Commissioners and Chief Trade War of Words*, WASH. POST, Dec. 10, 2011, at A18. After we heard oral argument in this case, Jaczko resigned.

We should ensure that the Commission's next chapter begins with adherence to the law. Today's order is premised on speculation about what Congress might do at some unknown (and perhaps quite distant) point in the future. *See* Concurring Op. at 1. For instance, Congress might moot the Commission's lack of funding argument by appropriating additional sums. Or it might repeal the Commission's statutory duty by prohibiting further action on the Yucca Mountain application. Or it might do nothing at all. Whatever might happen in the future, the fact remains that Congress has *already* spoken. We should not wait for further instructions. Congress enacted the Nuclear Waste Policy Act, which requires the Commission to rule on the Yucca Mountain application, and it appropriated funds for that purpose. Our duty is to enforce these statutes, plain and simple. "Once Congress . . . has decided the order of priorities in a given area, it is for the Executive to administer the laws and for the courts to enforce them when enforcement is sought." *TVA v. Hill*, 437 U.S. 153, 194 (1978). Holding the case in abeyance indefinitely, based on the mere *possibility* of future legislative action, shirks this basic obligation and perpetuates the Commission's unlawful delay. For these reasons, I respectfully dissent.